IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  09-cv-00748-RPM

CHARLES FRANK LOFTICE,

      Plaintiff,

v.

HOME DEPOT USA, INC.,

      Defendant.

---

FINDINGS, CONCLUSIONS AND ORDER FOR JUDGMENT

---

Charles Frank Loftice, born October 4, 1943, claims that the termination of his employment as Operations Manager of Home Depot Store 1502 in Arvada, Colorado, on June 26, 2008, was in violation of the protections provided by the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 623, *et. seq.*  The evidence admitted at trial fails to support that claim.

Home Depot sells home improvement and construction materials in retail stores that operate within an organizational structure that establishes a hierarchy of supervision.  Each store has a Store Manager, responsible for its operations overall.  The Store Manager reports to a District Manager, overseeing as many as 11 stores in a geographical district.  The District Manager reports to a Regional Vice President, responsible for several districts.  Assistance with personnel management is provided by a somewhat parallel structure of human resource managers.  The Human Resources Manager working with the Store Manager reported to a District Human Resources Manager as well as the Store Manager and the District Human Resources Manager, working with the District Manager reported to a Regional Human Resources Director.

The sales activities in each store are conducted by associates who are supervised by Department Heads, who report to Assistant Store Managers (ASMs), four or five in number. Responsibility for management of the administrative aspects of each store is assigned to an Operations Manager (OM) who is at the same pay grade as the ASMs. The OM functions as the second in command for such functions as customer service, cashiers, inventory and shipping and receiving.

Mr. Loftice began his employment with Home Depot as a sales associate in Store 1502 in August, 2001. He was promoted to a Department Head in 2002. Robert Joanou became Store Manager of Store 1502 in May, 2004. Mr. Joanou promoted Mr. Loftice to ASM for night operations in 2005. Mr. Joanou moved Mr. Loftice to a daytime position in 2006.

On April 30, 2007, Mr. Joanou held a performance discussion with Mr. Loftice concerning customer complaints and a fork lift left outside the store after closing. Ex. D.

In July, 2007, Mr. Loftice was disciplined for improperly instructing cashiers to offer discounts on product prices in exchange for purchasing extended service plans (ESPs) to inflate that metric of store performance. Mr. Loftice wrote an apology for his conduct to Gerald O'Hagan, District Manager. Ex. B-15.

In December, 2007, Mr. Joanou recommended that Mr. Loftice be assigned as Operations Manager. Deborah Layton-Root, District human Resources Manager, had reservations about this assignment. District Manager O'Hagan approved and Mr. Loftice began the duties of that position on December 10, 2007. There is no evidence that he was given any training for that increased responsibility for the store. Performance problems began almost immediately. There were customer complaints. Ex. N.

On December 19, 2007, Christmas sale items were marked down 75% causing a $20,000. loss. Mr. Joanou was on vacation, leaving management authority to Mr. Loftice. Mr. Loftice denied authorizing this markdown. Ms. Deborah Layton Root, District Human Resources Manager, conducted an investigation. She took statements from two store employees saying that Mr. Loftice directed that it be done.

On February 3, 2008, Ms. Layton-Root sent an e-mail to Robin Gonzales, an assistant to Gerald O'Hagan, and to Mr. O'Hagan, Mr. Joanou and Frank Farwell, Regional Human Resources Director, recommending termination of Mr. Loftice's employment for the unauthorized markdown of merchandise and four customer complaints. Robin Gonzales expressed concerns about using those complaints as a basis for termination because of a lack of prior discipline but agreed to pursue it based on the merchandise markdown.

On February 4, 2008, Frank Farwell Regional Human Resources Director, noted that there was no record to show that Robert Joanou had talked to Mr. Loftice "to tell him that what he was doing is not acceptable and that he must change." Ex. M. Mr. Farwell suggested that the issues be addressed in a Performance Improvement Plan (PIP).

Robert Joanou was instructed to draft a PIP and he did so with the assistance of Terri Boese, the store human resources manager and Ms. Layton-Root. The PIP (Ex. X) was presented to Mr. Loftice by Mr. Joanou on March 25, 2008. The PIP directed Mr. Loftice to prepare three action plans, using a company planning guide to address his leadership of store associates, decision-making and communication skills. The PIP was to extend to June 23, 2008, and required weekly meetings with Robert Joanou to review performance. Those meetings were documented by Mr. Joanou in a Performance Discussion Tracking Form. Exhibit V.

After 5 weeks, Mr. Joanou told the plaintiff that he was not going to get off the PIP. This prompted Mr. Loftice to secretly tape record the next meeting on April 30, 2008, and meetings held on May 7, 2008, May 28 or 31, 2008, and June 16, 2008. A transcript of those recordings was received as Ex. 34. The April 30 meeting shows that the plaintiff, a former police officer, was skilled at obtaining an admission to be used as evidence.

Performance deficiencies were discussed at these weekly meetings but they also reflect a failure of the store manager to be specific as to the improvements being required. It is fair to say that Mr. Loftice did not have an adequate understanding of the job he was to perform.

The store human resources manager position was eliminated on April 30, 2008. Before Ms. Boese left the store, Mr. Joanou suggested that she may get the Operations Manager job.

The plaintiff's performance was reviewed by Gerald O'Hagan, Deborah Layton-Root and Tess Simpkins, the District Operations Manager, who had conducted store performance audits, in June 2008. They concluded that termination was warranted. Mr. O'Hagan asked Mr. Joanou to make a recommendation and he recommended termination. Approval was received from Frank Farwell and Robin Gonzales at the regional office.

On June 26, 2008, a termination notice, signed by Robert Joanou, was given to Mr. Loftice. The sole stated reason was failure to successfully complete the PIP process. Ex. 28.

The plaintiff presented some evidence of negative comments about age attributed to Mr. Joanou in 2007 and 2008 as suggestive of age bias as a motivation for the termination. Those comments are insufficient to support such a finding. There were other employees in their 60's and 70's who worked satisfactorily under the store manager's supervision. The PIP was poorly managed by Mr. Joanou but it is not reasonable to infer that Mr. Loftice was set up to fail because of his age.

Notably, the decisions made were a result of a collaborative process and there is nothing to suggest that any of the other participants at the district and regional offices were influenced by the plaintiff's age.

Mr. Loftice was replaced by a much younger man, Eric Cochran. That assignment was made by Gerald O'Hagan and Deborah Layton-Root, not Mr. Joanou.

Whether this evidence is analyzed under the "but for" standard in *Gross v. FBL Financial Services, Inc.,* 129 S.Ct. 2343 (2009) or age as a factor that made a difference, as in *Wilkerson v. Shinseki,* 606 F.3d (10th Cir. 2010) the plaintiff has failed to prove his claim.

Accordingly, it is

ORDERED that judgment shall enter for the defendant, dismissing this action and awarding statutory costs.

DATED:  December 20th, 2010

BY THE COURT:

s/Richard P. Matsch

_____
Richard P. Matsch, Senior District Judge